**SO ORDERED.**

**SIGNED this 17 day of March, 2015.**

*Stephani W. Humrickhouse*

_____

**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

IN RE:

**JOHN DAVIE WAGGETT,**                    **CASE NO: 09-04152-8-SWH**
**NANCY CHARLENE FLOYD WAGGETT,**          **CHAPTER 11**

     **DEBTORS.**

_____

**JOHN DAVIE WAGGETT,**
**NANCY CHARLENE FLOYD WAGGETT,**

     **PLAINTIFFS,**

     **v.**                                **ADVERSARY PROCEEDING**
                                           **NO:14-00096-8-SWH**

**SELECT PORTFOLIO SERVICING, INC.**
**AND BANK OF NEW YORK MELLON**
**F/K/A  BANK OF NEW YORK, AS**
**TRUSTEE FOR THE CERTIFICATE**
**HOLDERS OF CWALT,  INC.,**
**ALTERNATIVE LOAN TRUST 2005- 27,**
**MORTGAGE PASS-THROUGH**
**CERTIFICATES SERIES 2005-27,**

     **DEFENDANTS.**

### ORDER

The matters before the court are the motion to dismiss filed by the Bank of New York Mellon

Trust and Select Portfolio Servicing and the response in opposition to the motion to dismiss filed

by John Davie Waggett and Nancy Charlene Floyd Waggett.  A hearing was held on December 10, 2014 in Raleigh, North Carolina to consider these matters.

## BACKGROUND

John Davie Waggett and Nancy Charlene Floyd Waggett, the plaintiffs, filed a voluntary petition seeking relief under Chapter 11 of the United States Bankruptcy Code on May 19, 2009. Four years prior to the petition date, on May 27, 2005, the plaintiffs executed an Adjustable Rate Note in favor of America's Wholesale Lender ("America's Wholesale") in the original principal amount of $1,200,000.00, with interest accruing at a variable rate between 2.875% to 9.950% per annum (the "Note").  The Note called for monthly payments of $3,859.67 and was set to mature on June 1, 2035.  The Note was secured by a Deed of Trust on real property located at 1604 Carolina Beach Avenue North, Unit 2, Carolina Beach, North Carolina (the "Property").  Following execution of the Note and the Deed of Trust, the Property was transferred by plaintiffs to a related entity, D&CW Properties, LLC ("D&CW Properties").  On January 1, 2008, Bank of America, N.A. ("Bank of America") purchased Countrywide as well as its subsidiary America's Wholesale. Thereafter, Bank of America engaged BAC Home Loans Servicing to service the Note and Deed of Trust.

On June 15, 2009, following the petition date, America's Wholesale filed proof of claim number 2 in the amount of $1,373,341.54, which listed the creditor as America's Wholesale and directed that all notices be sent to BAC Home Loans Servicing.  As of the petition date, the plaintiffs were delinquent in ten monthly payments under the Note and Deed of Trust.

On June 24, 2009, America's Wholesale filed a motion for relief from the automatic stay, requesting relief under 11 U.S.C. § 362(d) of the Bankruptcy Code to commence foreclosure

proceedings against the Property.  The plaintiffs did not oppose the motion for relief from stay and on July 17, 2009, the court entered an order granting relief from the automatic stay, permitting America's Wholesale as well as its assignees and/or successors-in-interest, to exercise any and all rights against the Property and permitting America's Wholesale, its assignees and/or successors in interest to proceed with foreclosure of the Property.  The order also provided that America's Wholesale may "at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout/lost mitigation agreement."  Pursuant to the order, America's Wholesale, "through its servicing agent, may contact the Debtor **via telephone or written correspondence** to offer such an agreement." (emphasis in original).

On September 16, 2009, the plaintiffs filed their proposed chapter 11 plan of reorganization, which was subsequently amended on February 2, 2010. (collectively, the "Plan").  America's Wholesale timely submitted a ballot in favor of and accepting the treatment of its claim in the Plan. On April 28, 2011, the court entered the order confirming plan, which was later supplemented by order entered on March 9, 2012. (collectively, the "Confirmation Order").  As to America's Wholesale, the Plan as confirmed by the Confirmation Order, provides:

> 1604 CBAN Unit 2 Loan:  In the event D&CW Properties, LLC remains the owner of the collateral securing this claim on the Effective Date, the Debtors shall cause D&CW Properties, LLC to convey the real property securing this obligation to America's Wholesale Lender via a deed in lieu, within thirty (30) days of the Effective Date in exchange for a determined credit against the indebtedness. This credit can be determined by mutual agreement between America's Wholesale Lender and the Debtors or a determination pursuant to Section 506(a) by the Court. The deficiency, if any, will be treated in the General Unsecured Creditor Class.

> Article X of the Plan, entitled "Effect of Confirmation" provides:

> A. Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

B. <u>Injunction.</u> As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debtors or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims it may have against any party in interest.

The Property was never conveyed from D&CW Properties to America's Wholesale. On September 9, 2011, this court entered a final decree, upon finding that the Plan had been substantially consummated pursuant to 11 U.S.C. § 1101(2), and closed the plaintiffs' chapter 11 bankruptcy case.

On November 25, 2011, MERS, Inc., as nominee for America's Wholesale, assigned the Note, the Deed of Trust, as well as any and all rights possessed thereunder to defendant Bank of New York Mellon ("Bank of New York"), pursuant to an Assignment Deed of Trust. An assignment of claim was not filed with the court pursuant to Fed. R. Bankr. P. 3001(e)(4)[1].

After the entry of the Confirmation Order and the final decree, plaintiffs began receiving phone calls and communications from Bank of America, its agents, and successors-in-interest. In

---

[1]"Rule 3001(e) is designed to ensure that *sufficient notice* is given when a claim against the debtor is transferred or assigned post-petition. <u>In re Arc Energy Corp.</u>, No. 96-1529, 1997 WL 570878, at *5 (4th Cir. Sept. 16, 1997). Rule 3001(e)(4) provides: "[i]f a claim. . . has been transferred for security after the proof of claim has been filed, evidence of the terms of the transfer shall be filed by the transferee." F.R.B.P. 3001(e)(4).  At no point during the bankruptcy case was an assignment of claim or notice of address change filed to reflect the transfer and the correct mailing address for the creditor.

response to such communications, on January 17, 2012, plaintiffs' counsel sent a letter to Bank of America, America's Wholesale and counsel for America's Wholesale requesting that they cease from further contacting the plaintiffs and reminding that "pursuant to the confirmed Plan, Bank of America is to foreclose on the property, and is not entitled to any further relief."[2]

Eventually, Bank of New York engaged Select Portfolio Servicing, Inc. ("Select Portfolio") to service the mortgage loan account. Select Portfolio sent a letter to the plaintiffs dated November 20, 2012 informing the plaintiffs that a relationship manager had been assigned to their account to assist the plaintiffs with "any aspect of [the] account, including resolution options." The November 20, 2012 letter provides that "[t]his information is intended for informational purposes only and is not considered an attempt to collect a debt."

On November 30, 2012, counsel for the plaintiffs, contacted Select Portfolio by letter. The letter noted that the plaintiffs had been receiving phone calls from Select Portfolio regarding the Property. The letter provided that the claim and indebtedness secured by the "property are addressed in the confirmed plan and that [plaintiffs] are in compliance with the confirmed plan."[3] Counsel for the plaintiffs requested that Select Portfolio cease all further contact with the plaintiffs to avoid legal action being pursued. Select Portfolio acknowledged receipt of the November 30, 2012 letter.

---

[2]The court notes that while counsel for the debtors advises in the January 17, 2012 letter that pursuant to the Confirmed Plan Bank of America is to foreclose on the property and is not entitled to any further relief, this is not what the Confirmed Plan provides. The Confirmed Plan provides that "the Debtors shall cause D&CW Properties to convey the real property . . . to America's Wholesale via deed in lieu, within thirty (30) days of the effective date."

[3]The court notes that the debtors were not in compliance with the Confirmed Plan as it provided that the debtors were to cause D&CW Properties to convey the real property to America's Wholesale via deed in lieu, within thirty (30) days of the effective date and the debtors never did this.

5

During this time, plaintiffs also received monthly mortgage statements from Select Portfolio, which provided that the statements were attempts to collect the indebtedness owed under the Note. Select Portfolio also sent a letter dated December 18, 2012 entitled "Notice of Default—Right to Cure." This letter was addressed to the plaintiffs and stated that the Note was in default as a result of plaintiffs' failure to make payments. The stated purpose of the Notice of Default was to provide notice of plaintiffs' default, the actions required to cure the default and provided that "the total amount due and required to cure the default on your loan is $369,145.29 . . ." The Notice of Default provided it was a "formal demand for payment[,]" and was a "communication from a debt collector" and "an attempt to collect a debt and information obtained" would be used for that purpose.

Select Portfolio issued a notice to plaintiffs' counsel dated January 18, 2013, notifying plaintiffs that the interest rate applicable to the Note would be 3% per annum and that the required monthly payment would remain at $6,021.93. The notice advised that the account had the potential for negative amortization and in order to fully amortize the loan over the remainder of the term, the new payment would be $7,436.41.

On January 30, 2013, plaintiffs' counsel received correspondence indicating that payments had not been made on the account as required by the Note and demanded that plaintiffs provide within 10 days of January 30, 2013, verbal or written verification that the Property has been secured, winterized and/or exterior maintained. The letter provided that failure to do so, "will result in [Select Portfolio] taking the steps necessary to secure, winterize, and/or maintain the property[,]" with the plaintiffs being responsible for paying any and all costs associated therewith.

On February 4, 2013, Select Portfolio issued a notice to plaintiffs, by and through plaintiffs' counsel, stating that because your mortgage loan is in default and "your property is in danger of

being referred to foreclosure."  The notice further stated that "[a]s of the date of this letter, your account has not been referred to foreclosure" and that Select Portfolio has made attempts to contact you.

By letter dated April 11, 2013, counsel for the plaintiffs notified Select Portfolio that its continuous communications with plaintiffs aimed at collecting the balance of the Note, both written and telephonic, were in direct violation of the Plan and the Confirmation Order.  Counsel for the plaintiffs reiterated that the continued remittance of monthly statements, notices and correspondence—to the attention of Stubbs & Perdue on behalf of plaintiffs was a waste of time and requested that it cease from sending any further correspondence and take whatever action is necessary to reclaim the Property.[4]

On November 26, 2013, a foreclosure hearing was held before the New Hanover Clerk of Superior Court, File No. 12-SP-955.  That same day, a Notice of Foreclosure Sale was issued to plaintiffs, dated November 26, 2013, by Trustee Services of Carolina, LLC, on behalf of Bank of New York, which indicated that the Property would be sold to the highest bidder at a sale to be conducted on December 27, 2013 at 10:00 a.m.

On November 27, 2013, the court entered the order granting the plaintiffs' request for an entry of a discharge pursuant to 11 U.S.C. § 1141(d)(5)(B).  The certificate of notice accompanying the discharge provides that on November 27, 2013, the discharge was served upon America's Wholesale, BAC Home Loans Servicing and Polk Prober & Raphel, as counsel for both America's Wholesale and BAC Home Loans Servicing.

---

[4]Once again, the court notes that pursuant to the Confirmed Plan the debtors were to cause the real property to be conveyed via deed in lieu to America's Wholesale within thirty (30) days of the effective date.

On December 2, 2013, Select Portfolio issued another notice to plaintiffs that the Note was in default and that the Property was subject to foreclosure. This notice provides that "this loan is in default and your home is subject to foreclosure proceedings." On December 18, 2013, plaintiffs received a separate notice from Select Portfolio, stating that the interest rate applicable to the Note will be 3.000% per annum effective February 1, 2014.

The property was sold on January 16, 2014 at a public auction at the New Hanover County Courthouse in Wilmington, North Carolina. The property was purchased by Bank of New York for $589,261.92.

By letter dated January 18, 2014, Select Portfolio notified plaintiffs that the interest rate applicable to the Note, starting March 1, 2014, was 3% per annum. By letter dated February 15, 2014, Select Portfolio issued a notice indicating that the monthly payment owed by plaintiffs would not change and would remain at $7,436.41.

According to the plaintiffs' consumer credit reports prepared by Equifax, Experian and TransUnion, Select Portfolio reported that the plaintiffs were past due, delinquent, in default and remained obligated to repay the indebtedness evidenced by the Note. The female plaintiff's Experian Credit Report reveals that Select Portfolio reported that she was 180 days past due under the terms of the Note from January 2013 through June 2013. Additionally, it reported that foreclosure proceedings had been commenced from July 2013 through January 2014, and in February 2014, Select Portfolio had foreclosed on the collateral securing the Note. The plaintiffs' Experian Credit Report also indicates that the account relating to the Note was previously in dispute and an investigation had been completed by Select Portfolio.

8

Pursuant to the complaint, plaintiffs seek compensatory, statutory, treble and punitive damages, attorneys' fees and expenses, declaratory relief pursuant to 28 U.S.C. § 2201 and the imposition of sanctions based on the following eight claims for relief as set forth in the Amended Complaint: (1) violation of Plan, Confirmation Order and discharge injunction pursuant to 11 U.S.C. §§ 105, 524 and 1141; (2) violation of the North Carolina Debt Collection Act pursuant to Chapter 75 of the North Carolina General Statutes; (3) intentional infliction of emotional distress arising from defendants' continued and egregious collection methods employed against plaintiffs; (4) in the alternative, negligent infliction of emotional distress; (5) negligence; (6) violations of the Telephone Consumer Practice Act pursuant to 47 U.S.C. § 227 et seq.; (7) violation of the Fair Credit Reporting Act pursuant to 15 U.S.C. § 1681 et seq.; and (8) request for declaratory judgment pursuant to the Federal Declaratory Judgment Act pursuant to 28 U.S.C. § 2201(a).

The defendants move to dismiss the second, third, fourth and fifth claims for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012(b)(6), on the grounds that these claims are preempted by the Bankruptcy Code. Additionally, Select Portfolio seeks to dismiss the second, third, fourth, sixth and eighth claims on the basis that the plaintiffs have failed to state a claim.

Plaintiffs respond that the second, third, fourth and fifth claims are not preempted by the Bankruptcy Code and that the Amended Complaint alleges facts sufficient to establish claims for relief that are plausible on their face.

## DISCUSSION

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The complaint must include "enough facts to state a claim to relief that is plausible on its face." Angell v. Ber Care, Inc. (In re Caremerica, Inc.) 409 B.R. 737, 745 (Bankr. E.D.N.C. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), there are "two working principles" upon which the heightened pleading standard rests:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.

Id. at 747 (quoting Ashcroft v.Iqbal, 556 U.S. 662, 678-79 (2009)).

## I.  Motion to Dismiss—Preemption:

First, the court will address whether the Bankruptcy Code preempts plaintiffs' second, third, fourth and fifth claims for relief, seeking the recovery of compensatory, treble and punitive damages, plus attorneys' fees for the defendants' alleged violations of the North Carolina Debt Collection Act, intentional or, in the alternative, negligent infliction of emotional distress and negligence.

The Supremacy Clause of the United States Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the Land." U.S. CONST. art. VI, cl. 2. "Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." Maryland v. Louisiana, 451 U.S. 725, 746 (1981).  This presumption "is strongest when Congress legislates 'in a field which the States have traditionally occupied.'" So. Blasting Servs., Inc. v. Wilkes County, N.C., 288 F.3d 584, 590 (4th Cir. 2002) (citation omitted).

10

State laws and remedies may be preempted in one of three ways: (1) Congress may explicitly require preemption, <u>Schneidewind v. ANR Pipeline Co.</u>, 485 U.S. 293, 299 (1988); (2) Congress may imply preemption when "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it" <u>Cipollone v. Liggett Grp., Inc.</u>, 505 U.S. 504, 516 (1992) (internal quotation marks and citations omitted); or (3) when the state law actually conflicts with the federal law and it is "impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." <u>Schneidewind</u>, 485 U.S. at 300 (internal quotation marks and citations omitted).

When determining whether federal law preempts state law the court must begin "with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." <u>Altria Grp., Inc. v. Good</u>, 555 U.S. 70, 77 (2008) (citation omitted). "[Consumer protection] laws have historically fallen into the purview of the states' broad police powers, to which the courts have afforded special solemnity." <u>Sukumar v. Nautilus, Inc.</u>, 829 F. Supp. 2d 386, 392 (W.D. Va. 2011); <u>see</u>, <u>e.g.</u>, <u>California v. ARC Am. Corp.</u>, 490 U.S. 93, 101 (1989) (noting that unfair and/or deceptive business practices is "an area traditionally regulated by the States").

"Congress did not place preemptive language in the Bankruptcy Code, nor did Congress intend that the Bankruptcy Code be so pervasive that it occupy the field of debtor/creditor relations. Therefore, in order for this court to conclude that the Bankruptcy Code preempts the [State] law, the court must conclude that an actual conflict exists between a specific provision of the Bankruptcy Code" and the North Carolina Debt Collection Act, negligence, and negligent or, in the alternative,

11

intentional infliction of emotional distress.  In re P.K.R. Convalescent Ctrs., Inc., 189 B.R. 90, 93 (Bankr. E.D. Va. 1995).

The defendants contend that the second, third, fourth and fifth claims, all of which are based upon North Carolina law, are preempted by the Bankruptcy Code because the "entire basis for these state law claims is their allegations that certain alleged communications violated the Bankruptcy Plan, the Confirmation Order, and the Discharge Injunction."  The defendants argue that these alleged violations of the Plan, Confirmation Order and discharge injunction should instead be brought as a contempt action through 11 U.S.C. § 105 to enforce the injunction imposed by 11 U.S.C. § 524.  Accordingly, the defendants contend that the remedies provided by the Bankruptcy Code preempt plaintiffs' state law claims.  The plaintiffs respond that their claims for relief are not preempted because the enforcement provisions of the Bankruptcy Code, primarily the discharge injunction under § 524 of the Bankruptcy Code, are not their exclusive remedy for the defendants' collection activities that violate North Carolina law.  Further, plaintiffs contend that their second, third, fourth, and fifth claims are premised solely on the continuous, negligent, deceptive and unlawful debt collection activities of the defendants, all of which occurred after September 9, 2011, the date the bankruptcy case was closed and the final decree was entered by the court.  Accordingly, the plaintiffs allege the defendants are liable under the Bankruptcy Code and North Carolina law.

Defendants rely on the following cases as support for their contention that the plaintiffs' claims are preempted: Johnston v. Telecheck Services, Inc. (In re Johnston) 362 B.R. 730 (Bankr. N.D.W.Va. 2007);  Diamante v. Solomon, No. 1:99CV1339, 2001 WL 1217226 (N.D.N.Y. Sept. 18, 2001); and  Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 426 (6th Cir. 2000).

In Johnston v. Telecheck Services, Inc. (In re Johnston) 362 B.R. 730, 734 (Bankr. N.D.W.Va. 2007), the Bankruptcy Court for the Northern District of West Virginia held that a chapter 7 debtor could not assert state law causes of action under W. Va. Code §§ 46A-2-124(c) or 46A-2-127(d) because those subsections attempt to govern the same activity regulated by the Bankruptcy Code in prohibiting creditor attempts to collect debts in violation of the automatic stay and discharge injunction. The debtor in Johnston filed an adversary proceeding, post-discharge, seeking damages for violation of the automatic stay, the discharge injunction and state law claims under the West Virginia Consumer Credit and Protection Act. Id. at 731. The claims in Johnston were based upon allegations that the *defendant had violated the discharge injunction*. Id. at 732 (emphasis added). More specifically, the debtor alleged that "Telecheck violated W. Va.Code § 46A-2-124(c), by attempting to collect a debt using false accusations. The false accusation was that the Debtor had willfully refused to pay a just debt *after that debt had been discharged*." Id. (emphasis added). The debtor also alleged that "Telecheck violated W. Va.Code § 46A-2-127(d), for using a false representation concerning the extent or the amount of a claim against her when the *underlying claim had been discharged*." Id. (emphasis added). The court noted that the state law claims, as they were applied in the adversary proceeding, were premised on the creditor's violation of the chapter 7 discharge. Id. at 736. Accordingly, the court held that the Bankruptcy Code preempted the plaintiff's state law claims. Id.

The United States District Court for the Northern District of New York granted the defendant's motion to dismiss the plaintiff's state law claims on the grounds that the Bankruptcy Code preempted the claims when the sole basis for the plaintiff's state law claim was his allegation that the defendant violated § 524 of the Bankruptcy Code by attempting to collect a discharged debt.

Diamante v. Solomon & Solomon, P.C., No. 1:99CV1339, 2001 WL 1217226, *2 (N.D.N.Y. Sept. 18, 2001). The court held that to permit such claims would "thwart Congress' intent in promulgating the Bankruptcy Code to create a singular federal system to adjust all of the rights and duties of both creditors and debtors." Id. The court noted that the Bankruptcy Code provided a specific remedy for the violation which was the basis of the claim—a civil contempt proceeding and allowing plaintiff to circumvent this remedy would contradict the Bankruptcy Code's remedial scheme. Id.

In both Johnston and Diamante the plaintiffs' state law claims were based upon allegations that the defendants violated the automatic stay and/or discharge injunction.[5] Here, the second, third, fourth and fifth claims for relief are not premised solely on allegations that the defendants violated the automatic stay and/or discharge injunction. The plaintiffs set forth other grounds for relief under state law. Further, other courts have held that the Bankruptcy Code does not preempt, or otherwise preclude claims for relief based on allegations giving rise to a violation of the discharge injunction. Dougherty v. Wells Fargo Home Loans, Inc., 425 F. Supp. 2d 599, 608-09 (E.D. Pa. 2006) (noting that the plaintiff's state law claims did not presuppose violations of the Bankruptcy Code and as a result there was no risk of conflict between enforcement of the state laws and enforcement of the federal bankruptcy laws.); Randolph v. IMBS, Inc., 368 F.3d 726, 732 (7th Cir. 2004) (noting that

_____

[5]Additionally, the court notes that in Johnston and Diamante, the plaintiffs were chapter 7 debtors. Here, however, the plaintiffs were chapter 11 debtors. Accordingly, the terms of the plan were binding upon the plaintiffs and the defendants as opposed to any previous agreements entered into by the parties. See Covert v. LVNV Funding LLC, No. 14-1016 (4th Cir. 2015) (noting that 11 U.S.C. § 1327(a) states the general rule that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."); see also In re Kirkbride, No. 08-00120-8-JRL, 2010 WL 4809334, at *3 (Bankr. E.D.N.C. Nov. 19, 2010 (providing that in individual chapter 11 cases the discharge is not generally granted upon plan confirmation and that the parties are bound by the confirmed plan.)

the Bankruptcy Code "does not work an implied repeal of the [Fair Debt Collection Practices Act]");

Bagwell v. Portfolio Recovery Assocs., LLC, No. 4:08-CV-03229-GTE, 2009 WL 1708227, at *1-2

(E.D. Ark. Jun. 5, 2009) (holding that the Fair Debt Collection Practices Act and the Bankruptcy

Code can "coexist" if there is not an "irreconcilable conflict."); Burkhalter v. Lindquist & Trudeau,

Inc., 2005 WL 1983809, at *1 (E.D. Mo. Aug. 16, 2005) (noting that the Fair Debt Collection

Practices Act claim was not precluded by an exclusive remedy available under the Bankruptcy Code

as the claim alleged other violations than just a violation of the bankruptcy discharge injunction.);

Evans v. Midland Funding, LLC, 574 F. Supp. 2d 808, 817 (S.D. Oh. 2008) (denying dismissal of

Fair Debt Collection Practices Act claim because claim was not to hold defendants in contempt for

violation of discharge order); Drnavich v. Calvary Portfolio Service, LLC, No. 05-1022, 2005 WL

2406030, at * 2 (D. Minn. Sep. 29, 2005) (finding that the Bankruptcy Code and the Fair Debt

Collection Practices Act do not irreconcilably conflict with one another).

The Sixth Circuit in Pertuso v. Ford Motor Credit Co., 233 F.3d 417 (6th Cir. 2000), held

that  "there is no private right of action for breaches of § 524; instead 'the traditional remedy for

violation of an injunction lies in contempt proceedings. . .'" Gunter v. Columbus Check Cashiers,

Inc. (In re Gunter), 334 B.R. 900, 905 (Bankr. S.D. Oh. 2005) (citation omitted).  However,

"[n]owhere in Pertuso does it state that the Bankruptcy Code bars a debtor from bringing other

causes of action (e.g. FDCPA claims) based upon the same [set] of facts that give rise to a discharge

injunction violation."  Id.

In Dougherty v. Wells Fargo Home Loans, Inc., 425 F. Supp. 2d 599, 608 (E.D. Pa. 2006),

the United States District Court for the Eastern District of Pennsylvania addressed the issue of

whether the Bankruptcy Code preempted a chapter 13 debtor's state law claims, brought post-

discharge, for relief such as breach of contract, unfair trade practices in violation of Pennsylvania's

Unfair Trade Practices and Consumer Protection Law and violation of Pennsylvania's Fair Credit

Extension Uniformity Act.  The creditor moved to dismiss the complaint for failure to state claims

for which relief may be granted, arguing that the state law claims were preempted by the Bankruptcy

Code.  Id.  The court denied the creditor's motion and held that the Bankruptcy Code did not

preempt the state law claims for relief.  Id. at 609.  The court noted:

> Plaintiff's state law claims do not presuppose violation of the Bankruptcy Code.
> Consequently, there is no risk of conflict between enforcement of the state laws and
> enforcement of the federal bankruptcy laws.  *Indeed, merely because a Plaintiff*
> *brings a state law claim in the context of a bankruptcy matter does not justify*
> *preemption of those claims, particularly where the underlying facts of the state law*
> *claim are not based on a violation of the Code.*
>
> In addition, Defendant's alleged misconduct occurred after Plaintiff's Plan had been
> confirmed by the bankruptcy court and the bulk of the bankruptcy proceedings had
> already occurred.  There is thus little risk that allowing Plaintiff's state law claims
> for breach of contract and unfair trade practices to go forward will disrupt the
> uniform application of the federal bankruptcy laws or contravene congressional
> purpose.  This is on contrast to those cases in which the alleged misconduct occurred
> early on in bankruptcy proceedings.
>
> Id. at 609 (emphasis added).

This court is aware of no North Carolina cases addressing the specific issue of whether the

Bankruptcy Code preempts the plaintiffs' state law claims.  Here, the defendants do not point to any

specific provision in the Bankruptcy Code that directly conflicts with the plaintiffs' claims.  The

plaintiffs' second, third, fourth and fifth claims are premised on other grounds than just a violation

of the discharge injunction, and are instead premised on allegations of continuous, negligent,

deceptive and unlawful debt collection activities of the defendants which occurred after September

9, 2011, the date the bankruptcy case was closed and the Final Decree was entered.  There is little

risk that allowing the state law claims to go forward will disrupt the uniform application of the

bankruptcy laws or contravene congressional purpose.  Id.  It is clear from the plaintiffs' Amended

Complaint that the second, third, fourth and fifth claims for relief are not at all premised on the

violation of the discharge injunction.[6]  In fact, the second, third, fourth and fifth claims as set forth

---

[6] Plaintiffs' Second Claim for Relief—Violations of the North Carolina Debt Collection Act provides in part:

122. Defendants' conduct was grossly negligent and/or willful, rendering them liable for attempting to collect fees, interest, and expenses from the Plaintiffs that are not authorized by any agreement or permitted by applicable law.
123. Defendants have also violated the NCDCA by utilizing false, deceptive or misleading representations or methods in connection with the collection of a debt, as prohibited by, including but not limited to falsely representing the character, amount or legal status of a debt, as prohibited by §§ 58-70-110 of the North Carolina General Statutes, and used false representations or deceptive measures to collect or attempt to collect a debt from the Plaintiffs, as prohibited by the NCDA.
124. Upon information and belief, the Defendants have also caused, on account of their inability to collect on the indebtedness underlying the Note, adverse information to be reported and noted upon the Plaintiffs' credit reports.
125. The aforementioned actions displayed by the Defendants constitute unconscionable conduct the natural consequence of which is to harass, oppress or abuse the Plaintiffs in connection with the collection of the indebtedness allegedly owed under the Note, in violation of N.C. Gen. Stat. §§ 75-52 and 58-70-100.
126. The unscrupulous, immoral, oppressive and harassing actions and conduct of the Defendants, as set forth herein, proximately caused economic injury to the Plaintiffs, are in and affecting commerce and have the capacity to deceive an ordinary consumer. As such, the Defendants' actions, pattern of conduct and continued acquiescence, as alleged herein, constitute unfair and deceptive acts or practices pursuant to N.C. Gen. Stat. §§ 75-1.1 and Chapter 58 of the North Carolina General Statutes.
127. As a direct and proximate result of the conduct of Defendants, the Plaintiffs are entitled to recover from Defendants (i) actual damages in an amount in excess of SEVENTYFIVE THOUSAND DOLLARS ($75,000.00); (ii) treble damages against Defendants pursuant to N.C.G.S. § 75-16 and § 58-70-120; (iii) reasonable costs and attorneys' fees, as provided in N.C. Gen. Stat. §§ 75-16.1, 75-56 and 58-70-120; and (iv) civil penalties not less than FIVE HUNDRED DOLLARS ($500.00) nor greater than FOUR THOUSAND DOLLARS ($4,000.00) for each violation pursuant to N.C. Gen. Stat. § 75-56 and § 58-70-120.

Plaintiffs' Third Claim for Relief—Intentional Infliction of Emotional Distress provides in part:

129. Defendants engaged in extreme and outrageous conduct, as detailed above, which was intended to and did in fact cause emotional distress.
130. Defendants actions, as set forth herein, were done willfully, maliciously, outrageously, deliberately, purposefully and with the intention of inflicting emotional distress upon the Plaintiffs and/or were done with reckless disregard of the probability of causing great emotional distress to the Plaintiffs.

in the complaint do not even mention the words "discharge" or "discharge injunction."  The court

---

131. The actions and pattern of conduct displayed by the Defendants, which did result in severe and emotional distress to the Plaintiffs, would be highly offensive and outrageous to a reasonable person.

132. As a direct and proximate result of the aforementioned actions and conduct displayed by the Defendants, including but not limited to, their continuous and malicious collection methods, the Plaintiffs have incurred severe and grievous mental and emotional suffering, fright, anguish, shock, nervousness and anxiety.

133. On account of the foregoing, the Plaintiffs are entitled have and recover actual damages against Defendants on account of severe injuries caused by the egregious conduct of the Defendants, and for such punitive damages as the Court may award.

134. By reason of the Intentional Infliction of Emotional Distress by Defendants, the Plaintiffs have been damaged, and are entitled to recover damages from the Defendants, in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

135. Upon information and belief, the pattern of conduct, actions and omissions of the Defendants alleged herein constitute willful and wanton conduct in reckless disregard and

indifference to the well-being of the Plaintiffs. Upon information and belief, the Defendants have engaged in a pattern of similar conduct against other citizens in the State of North Carolina. Therefore, the Plaintiffs are entitled to recover punitive damages from Defendants in an amount to be determined at trial.

Plaintiffs' Fourth Claim for Relief—*In the alternative*—Negligent Infliction of Emotional Distress provides in part:

137. Defendants owed a duty to Plaintiffs to exercise reasonable care. Defendants' negligent acts, as alleged herein, constitute a breach of that duty.

138. The Defendants were negligent in that they failed to follow a duty of conduct imposed by law, and failed to act as a reasonable and prudent person or deputy would act under the same or similar circumstances.

139. Plaintiffs suffered from severe emotional distress as a proximate result of the Defendants negligence and are entitled to recover from the Defendants, jointly and severally, a sum in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

Plaintiffs' Fifth Claim for Relief—*In the alternative*—Negligence provides:

141. At all times herein, Defendants had a duty of conduct imposed by law to not otherwise harass the Plaintiffs and engage in unlawful conduct.

142. Defendants repeatedly breached such duty to Plaintiffs and were otherwise negligent, as detailed above.

143. As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered financial harm and emotional distress, and other such damages to be proven at the trial of this matter.

144. Such emotional and physical injuries are anticipated to continue in the future.

145. As a proximate result of the foregoing, Plaintiffs have suffered damages and are entitled to recover an amount, jointly and severally, in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00) from Defendants.

18

finds that the defendants through their actions and collection methods have exposed themselves to liability under the Bankruptcy Code and North Carolina law.  Because there is no risk of conflict between the enforcement of the state laws and the Bankruptcy Code, the claims are not preempted. Therefore, the defendants motion to dismiss the second, third, fourth and fifth claims for failure to state a claim upon which relief can be granted on the grounds that these claims are preempted by the Bankruptcy Code is denied.

**II. Motion to Dismiss—Second, Third, Fourth, Sixth and Eighth Claims**:

The court will now address whether the plaintiffs' second, third, fourth, sixth and eighth claims for relief set forth sufficient facts to state claims for relief that are plausible on their face.

**A. Second Claim for Relief—Violations of the North Carolina Debt Collection Act [Chapter 75 of the North Carolina General Statutes]**

Defendants seek to dismiss pursuant to Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure the plaintiffs' second claim for relief because the plaintiffs have failed to set forth allegations relating to an unfair and deceptive trade[7] practice and have failed to allege facts showing an injury was caused by the unfair act.  Additionally, defendants argue that the plaintiffs cannot plausibly maintain they were deceived based on the purported representations of the defendants because the plaintiffs knew the defendants actions were in violation of the Plan, Confirmation Order and the discharge injunction.

---

[7]The parties in this case refer to "unfair and deceptive trade practices" claims. The court notes that N.C. Gen.Stat. § 75–1.1 refers to "unfair or deceptive acts or practices in or affecting commerce[,]" and no longer contains the word "trade." *See* N.C. Gen.Stat. § 75–1.1 (2011); see also Talbert v. Mauney, 80 N.C.App. 477, 343 S.E.2d 5 (1986). N. Carolina Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc., 220 N.C. App. 212, 214, 725 S.E.2d 638, 640 (2012) rev'd in part, vacated in part sub nom. Farm Bureau v. Cully's Motorcross Park, 366 N.C. 505, 742 S.E.2d 781 (2013).

The North Carolina Debt Collection Act "prohibits unfair, deceptive, or fraudulent practices in the collection of debts." DIRECTV, Inc. v. Cephas, 294 F. Supp. 2d 760, 763 (M.D.N.C. 2003) (citing N.C. Gen. Stat. § 75-51). Before a claim under the North Carolina Debt Collection Act may be considered, three threshold determinations must be satisfied: (1) the claimant owing the obligation is a "consumer"; (2) the obligation is a "debt"; and (3) the party against whom the claim is alleged must be a "debt collector." Campbell v. Wells Fargo Bank, N.A., No. 5:13-CV-785-D, 2014 WL 5471911, at *3 (Oct. 22, 2014) (citing Reid v. Ayers, 138 N.C. App. 261, 263, 531 S.E. 2d 231, 233 (2000)). Once these threshold requirements are satisfied, the court next applies the more generalized requirements of Section 75-1.1: (1) an unfair act; (2) in or affecting commerce; and (3) proximately causing injury. Id.

Unfair or deceptive acts include the use of threats, coercion, harassment, unreasonable publications of the consumer's debt, deceptive representations and unconscionable means. Davis Lake Cmty. Ass'n, Inc. v. Feldmann, 138 N.C. App. 292, 296, 530 S.E. 2d 865, 868 (2000). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Acts are deceptive if they "possess[ ] the tendency or capacity to mislead, or create[ ] the likelihood of deception." Chastain v. Wall, 78 N.C. App. 350, 337 S.E.2d 150, 154 (1985) (citation omitted). "The determination of whether an act or practice is an unfair or deceptive practice that violates N.C. Gen. Stat. § 75-1.1 is a question of law for the court." Gray v. N.C. Ins. Underwriting Ass'n., 352 N.C. 61, 68, 529 S.E. 2d 676, 681 (2000).

The Supreme Court of North Carolina has held that "where a party engages in conduct manifesting an inequitable assertion of power or position, such conduct constitutes an unfair act or

20

practice." S. Atlantic Ltd. P'ship of Tenn., L.P. v. Riese, 284 F.3d 518, 536 (2002) (citing Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 528 S.E. 2d 676, 681 (2000)).  Proof of actual deception is not required and there must only exist the potential for deception.  Id. (citation omitted).

The defendants do not raise issue with the threshold requirements as set forth above, but claim the plaintiffs do not set forth sufficient factual allegations that there was any unfair act that proximately caused injury.  In their second claim, plaintiffs allege that defendants utilized false, deceptive or misleading representations or methods in connection with the collection of the debt, as prohibited by, including but not limited to falsely representing the character, amount or legal status of the debt,§§ 58-70-110 of the North Carolina General Statutes, and the use of false representations or deceptive measures to collect or attempt to collect the debt from the plaintiffs. Plaintiffs contend that the defendants have caused, on account of their inability to collect on the indebtedness underlying the Note, adverse information to be reported and noted upon the plaintiffs' credit reports. According to the plaintiffs, these actions constitute unconscionable conduct the natural consequence of which is to harass, oppress or abuse the plaintiffs in connection with the collection of the indebtedness allegedly owed under the note, in violation of N.C. Gen. Stat. §§ 75-52 and 58-70-100. Furthermore, plaintiffs contend the unscrupulous, immoral, oppressive and harassing actions and conduct of the defendants, proximately caused economic injury to the plaintiffs.

As to the "in or affecting commerce" prong, the Amended Complaint only states that the "unscrupulous, immoral, oppressive and harassing actions and conduct of the Defendants, as set forth herein, proximately caused economic injury to the Plaintiffs, are in and affecting commerce and have the capacity to deceive an ordinary customer."  "Commerce" includes "all business

21

activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b).  The North Carolina Supreme Court has clarified that "business activities" are the normal day-to-day activities regularly conducted by the business and for which the business was organized.  Davis Lake Cmty. Ass'n, Inc. v. Feldman, 138 N.C. App. 292, 296 (2000) (citing HAJMM Co. v. House of Raeford Farms, 328 N.C. 578, 594, 403 S.E.2d 483, 493 (1991)).  The Amended Complaint identifies Select Portfolio as a member of the residential mortgage loan servicing industry specializing in the servicing of sub-prime residential mortgage loans in various states, including North Carolina.  The Amended Complaint further provides that Select Portfolio is a licensed collection agency with the North Carolina Department of Insurance. The plaintiffs set forth that Bank of New York is a state chartered bank and that Bank of New York employed and authorized Select Portfolio to act as its agent in the servicing and collection of the outstanding indebtedness allegedly owed by the plaintiffs.  Because the actions of the defendants were within their normal, day-to-day activities regularly conducted by the defendants, the debt-collection practices were business activities in or affecting commerce.  Id.

The court also finds that the Amended Complaint sets forth sufficient information to suggest there were "unfair" and "deceptive" attempts to collect the debt.  The multiple letters including the monthly mortgage statements, the notices of default, interest rate adjustments, the phone calls and requests for payments demonstrate that the acts complained of possessed the tendency of the capacity to mislead or create the likelihood of deception.  Additionally, the defendants continued to actively pursue collection of the Note after multiple requests by plaintiffs' counsel to cease collection and  notwithstanding the fact that the defendants' remedy was to foreclose on the property.  The Amended Complaint also sets forth that Select Portfolio reported to credit reporting

agencies that the plaintiffs had not paid and remained obligated to pay on the indebtedness.  <u>See</u>, N.C. Gen. Stat. § 75-51 (3).  Viewing all of the facts in favor of the plaintiffs, the court finds that the plaintiffs have set forth sufficient grounds to state a claim under the second claim for relief. Accordingly, the defendants motion to dismiss is denied with respect to the second claim.

**B. Third and Fourth Claims for Relief—Intentional Infliction of Emotional Distress or in the Alternative Negligent Infliction of Emotional Distress**

The defendants seek to dismiss the plaintiffs' third and fourth claims for failure to state a claim because the complaint does not set forth sufficient facts that the plaintiffs suffered a mental disorder as a result of the letters.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause, (3) severe emotional distress to another." <u>Pierce v. Atlantic Grp., Inc</u>. 219 N.C. App. 19, 32, 724 S.E.2d 568, 577 (2012) (citation omitted).  To state a claim for negligent infliction of emotional distress, a plaintiff must allege that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." <u>Id.</u> (citation omitted).

Severe emotional distress in the context of intentional infliction of emotional distress and negligent infliction of emotional distress means "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of *severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." <u>Id.</u>  While an actual diagnosis by a medical professional is not required for severe emotional distress, the plaintiffs must "at least forecast some evidence showing severe and disabling

psychological problems." Russ v. Causey, 732 F. Supp. 2d 589, 605 (E.D.N.C. 2010) (citation omitted). "Nevertheless, North Carolina law requires a 'high standard of proof' to establish severe emotional distress." Johnson v. City of Fayetteville, No. 5:12-CV-456-F, 2015 WL 928772, at *30 (E.D.N.C. Mar. 4, 2015). Allegations that do not identify a recognized and diagnosable mental or emotional disorder are not sufficient.

As to "severe emotional distress" the Amended Complaint alleges that as a "direct and proximate result of the [defendants'] actions . . . not limited to, their continuous and malicious collection methods, the plaintiffs have incurred severe and grievous mental and emotional suffering, fright, anguish, shock, nervousness and anxiety." The Amended Complaint does not set forth sufficient information indicating severe and disabling psychological problems and the plaintiffs do not allege any specific indications of "severe and grievous mental and emotional suffering, fright, anguish, shock, nervousness and anxiety." As a result, the plaintiffs' allegations are not sufficient to state a claim for intentional or negligent infliction of emotional distress. Accordingly, the court finds that the complaint on its face fails to set forth sufficient facts to support emotional distress as an element of the third and fourth claims. Therefore, the defendants' motion to dismiss is granted with respect to the third and fourth claims.

### C. Sixth Claim for Relief—Violations of Telephone Consumer Protection Act

Next, defendants seeks to dismiss the plaintiffs' sixth claim because the plaintiffs do not set forth sufficient facts establishing that the plaintiffs received calls on their cellular phones and that they did not give their consent.

To state a cause of action under the Telephone Consumer Protection Act, a plaintiff must allege that (1) a call was made; (2) using an automatic telephone dialing system or artificial or

24

prerecorded voice; (3) the number called was assigned to cellular telephone service; (4) the call was not made with the prior express consent of the recipient.  <u>Thrasher-Lyson v. Ill. Farmers Ins. Co.</u>, 861 F. Supp 2d 898, 905-05 (N.D. Ill. 2012).

Plaintiffs contend that the defendants, as part of their collection efforts and in violation of TCPA, contacted plaintiffs on their cellular telephones without their prior express consent.  Plaintiffs contend that based on the defendants' actions, the plaintiffs have incurred severe and grievous mental and emotional suffering, fright, anguish, shock, nervousness and anxiety.  The Amended Complaint provides Select Portfolio utilized "automatic telephone dialing system", as that term is defined and contemplated in 47 U.S.C. § 227(a)(1), to effect telephone collection of the Note after entry of the Confirmation Order and the Discharge.  The Defendants are each a "person" as defined under 47 U.S.C. § 153(39).  The Amended Complaint also provides that the plaintiffs requested that Select Portfolio cease any and all communications regarding the Note and the Property through letters sent to Select Portfolio.  The Amended Complaint further provides that each telephonic communication made by Select Portfolio to either of the plaintiffs' cellular telephones was a call made in violation of 47 U.S.C. § 227(b)(1)(A)(iii).  These allegations, for purposes of the motion to dismiss plausibly state a claim under which relief may be granted.  Issues regarding consent, raised by the defendants, are not to be decided at this phase of the proceeding and will be construed in a light most favorable to the plaintiffs.  Accordingly, the defendants motion to dismiss plaintiffs' sixth claim for relief is denied.

### D. Eighth Claim for Relief—Federal Declaratory Judgment Act

The defendants contend that the plaintiffs' declaratory judgment claim should be dismissed because it is inappropriate in this case as the alleged wrongs complained of have already been suffered.

Federal Rule of Civil Procedure 57 provides that the federal rules "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." FED. R. CIV. P. 57. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "any court of the United States . . . may declare the rights and other legal relations of any interest party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "'[D]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation,' and are untimely if the questionable conduct has already occurred or damages have already accrued." Tapia v. U.S. Bank, N.A., 718 F. Supp. 2d 689, 695 (E.D. Va. 2010).

Pursuant to the eighth claim, plaintiffs request that the court issue a declaratory judgment regarding whether the actions and conduct of the defendants, as are alleged within the Amended Complaint, constitute violations of the provisions of the Bankruptcy Code, the North Carolina Debt Collection Act, and the Telephone Consumer Protection Act. The Amended Complaint does not request that plaintiffs are entitled to a declaratory judgment based on future conduct, but instead requests declaratory judgment based on conduct which has already occurred, as set forth in the Amended Complaint. Accordingly, plaintiffs fail to set forth a plausible basis on which the court could grant a declaratory judgment regarding whether the actions and conduct of the defendants, constitute violations of the provisions of the Bankruptcy Code, the North Carolina Debt Collection

26

Act, and the Telephone Consumer Protection Act.  Therefore, the defendants' motion to dismiss is granted with respect to the plaintiffs' eighth claim.

## <u>CONCLUSION</u>

The court finds that the defendants' motion to dismiss is granted, without prejudice, with respect to the plaintiffs' third, fourth, fifth, and eighth claims for relief and denied with respect to the plaintiffs' second and sixth claims for relief.

**END OF DOCUMENT**